**RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP**
Joseph L. Schwartz, Esq. (JS-5525)
Kevin J. Larner, Esq. (KL-8627)
Tara J. Schellhorn, Esq. (TS-8155)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
(973) 538-0800

Attorneys for the Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>RARITAN HOSPITALITY, LLC,<br><br>Debtor. | Chapter 11<br><br> Cases Nos. 10-42099 (KCF)<br><br>Hon. Kathryn C. Ferguson, U.S.B.J. |

**FIRST AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11
OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTOR**

Dated: April 1, 2011

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARTICLE I.    RULES OF INTERPRETATION, COMPUTATION OF TIME AND
DEFINED TERMS .............................................................................................1

    A.    Rules of Interpretation. ...............................................................................1
    B.    Computation of Time. ..................................................................................2
    C.    Defined Terms. ............................................................................................2

ARTICLE II.    TREATMENT OF UNCLASSIFIED CLAIMS ..............................................17

    2.1.    Administrative Expense. ...........................................................................17
    2.2.    Professional Compensation Claims. .........................................................18
    2.3.    Priority Tax Claims. ..................................................................................18

ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS...................................19

ARTICLE IV.    TREATMENT OF CLAIMS............................................................................20

    4.1.    Treatment of Class 1 (Other Priority Claims). .........................................20
    4.2.    Treatment of Class 2 (Other Secured Claims). ........................................20
    4.3.    Treatment of Class 3 (Lifco Secured Claim). ...........................................20
    4.4.    Treatment of Class 4 (General Unsecured Claims) ...................................22
    4.5.    Treatment of Class 5 (Lifco Unsecured Claim).........................................22
    4.6.    Treatment of Class 6 (Litigation Unsecured Claims) ...............................23
    4.7.    Treatment of Class 7 (Membership Interests)...........................................23

ARTICLE V.    MEANS FOR IMPLEMENTATION OF THE PLAN ....................................23

    5.1.    Settlement of Certain Claims. ...................................................................23
    5.2.    Continued Corporate Existence and Vesting of Assets in the
Reorganized Debtor. .................................................................................24
    5.3.    Corporate Governance. .............................................................................25
    5.4.    Termination of Liens..................................................................................25
    5.5.    The Renovation Fund.................................................................................26
    5.6.    Equity in the Reorganized Debtor.............................................................26
    5.7.    Equity Offering. ........................................................................................26

ARTICLE VI.    PROVISIONS GOVERNING DISTRIBUTIONS ..........................................31

    6.1.    Date of Distributions..................................................................................31
    6.2.    Interest on Claims. ....................................................................................32
    6.3.    Distributions by Disbursing Agent. ..........................................................32
    6.4.    Powers of the Disbursing Agent. ..............................................................32
    6.5.    Delivery of Distributions. .........................................................................33

## TABLE OF CONTENTS
## (CONTINUED)

6.6.     Record Date for Distributions.................................................................34
6.7.     Allocation of Plan Distributions between Principal and Interest..........................34
6.8.     Means of Cash Payment........................................................................34
6.9.     Source of Cash for Plan Distributions. ...................................................34
6.10.    Withholding and Reporting Requirements. ...............................................35
6.11.    Setoffs. ...........................................................................................35
6.12.    Fractional Cents. .................................................................................36
6.13.    Preservation of Causes of Action...........................................................36

ARTICLE VII.    PROCEDURES FOR DISPUTED CLAIMS .................................................37

7.1.     Allowance of Claims............................................................................37
7.2.     Objections to Claims...........................................................................38
7.3.     Payments and Distributions with Respect to Disputed Claims.....................38
7.4.     Estimation of Claims...........................................................................38
7.5.     Distributions Related to Disputed Claims................................................39
7.6.     Preservation of Rights to Settle Claims. .................................................39
7.7.     Disallowed Claims..............................................................................39
7.8.     Reserve for Disputed Unsecured Claims. ................................................40

ARTICLE VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................40

8.1.     General Treatment. .............................................................................40
8.2.     Cure of Defaults.................................................................................41
8.3.     Rejection Damage Claims....................................................................42
8.4.     Assignment and Effect of Assumption. ..................................................42
8.5.     Insurance Policies. .............................................................................43

ARTICLE IX.    CONDITIONS TO EFFECTIVE DATE .................................................43

9.1.     Conditions to Occurrence of Effective Date............................................43
9.2.     Waiver of Conditions to Effective Date..................................................44
9.3.     Effect of Failure of Conditions to Effective Date. ...................................44

ARTICLE X.    EFFECTS OF PLAN CONFIRMATION .................................................44

10.1.    Vesting of Assets. ..............................................................................44
10.2.    Discharge. ........................................................................................45
10.3.    Term of Injunctions or Stays................................................................46
10.4.    Releases............................................................................................46
10.5.    Exculpation. ......................................................................................48

ARTICLE XI.    RETENTION OF JURISDICTION .......................................................49

ARTICLE XII.    GENERAL PROVISIONS.....................................................................51

# TABLE OF CONTENTS
## (CONTINUED)

| | | |
|---|---|---|
| 12.1. | Extension of Payment Dates. | 51 |
| 12.2. | Substantial Consummation. | 51 |
| 12.3. | Amendments. | 51 |
| 12.4. | Binding Effect. | 51 |
| 12.5. | Notices. | 52 |
| 12.6. | Interest. | 52 |
| 12.7. | Severability. | 52 |
| 12.8. | Governing Law. | 53 |
| 12.9. | Reservation of Rights. | 53 |
| 12.10. | Revocation or Withdrawal | 53 |
| 12.11. | Successors and Assigns. | 54 |
| 12.12. | Payment of Statutory Fees and Filing of Quarterly Reports. | 54 |
| 12.13. | Plan Supplement. | 54 |
| 12.14. | Headings. | 54 |
| 12.15. | Exhibits/Schedules. | 55 |
| 12.16. | No Admissions. | 55 |

4117703.6

<u>**INTRODUCTION**</u>

This First Amended Plan of Reorganization (the "Plan") is proposed by Raritan Hospitality, LLC, the within debtor and debtor-in-possession (the "Debtor") in the above-captioned Chapter 11 Case, pursuant to section 1121(a) of title 11 of the United States Code, 11 U.S.C. § 1121(a). Filed contemporaneously herewith, is the Debtor's Disclosure Statement, which is provided to you to help you understand the Plan. The Disclosure Statement contains, among other things, a discussion of the Debtor's history, a description of the Debtor's business, a summary of the material events that have occurred during the Chapter 11 proceeding and a summary of the Plan.

ALL CREDITORS AND OTHER PARTIES-IN-INTEREST ARE ENCOURAGED TO CAREFULLY REVIEW THE PLAN AND THE DISCLOSURE STATEMENT PREPARED BY THE DEBTOR IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH, HAVE BEEN AUTHORIZED BY THE DEBTOR OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

**ARTICLE I**

<u>**RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS**</u>

A.    <u>Rules of Interpretation.</u>

For purposes of interpreting the Plan: (i) any reference herein to a contract, instrument, release, indenture or other agreement or document being a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference herein to an existing document or exhibit filed, or to

be filed, shall mean such document or exhibit, as it may have been or may be amended, modified

or supplemented from time to time; (iii) unless otherwise specified, all references herein to

articles and sections are references to articles and sections of the Plan; (iv) the words "herein,"

"hereof," and "hereto" refer to the Plan in their entirety rather than to a particular portion of the

Plan; (v) captions and headings to articles and sections are inserted for convenience of reference

only and are not intended to be a part of or to affect the interpretation hereof; (vi) the rules of

construction set forth in Section 102 of the Bankruptcy Code shall apply; (vii) all exhibits to the

Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of

when filed with the Bankruptcy Court; and (viii) whenever a distribution of property is required

to be made on a particular date, the distribution shall be made on such date, or as soon as

practicable thereafter.

B.    <u>Computation of Time.</u>

When computing any period of time prescribed or allowed hereby, the provisions of

Bankruptcy Rule 9006(a) shall apply.

C.    <u>Defined Terms.</u>

For purposes of the Plan, unless the context otherwise requires, all capitalized terms not

otherwise defined shall have the meanings ascribed to them below.  Any term used in the Plan

that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall

have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules, as

applicable.

1.1.    "<u>Actions</u>" means all those certain potential claims, rights and Causes of Action

which the Debtor has or may bring against third parties as of Confirmation and the proceeds

thereof.

1.2.    "<u>Administrative Expense</u>" shall mean any cost or expense of administration of the Chapter 11 Case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the businesses of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of their businesses or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses.

1.3.    "<u>Administrative Expense Deadline</u>" means the date set by Order of the Bankruptcy Court as the last date for filing all requests for payment of Administrative Expenses.

1.4.    "<u>Allowed</u>" when used as an adjective preceding the words "Claims" or "Equity Interest," shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of such Claim or Equity Interest against the Debtor, or, if no proof of such Claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either  case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of Distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

1.5.    "<u>Allowed Administrative Expense</u>" means any Administrative Expense allowed under section 507(a)(2) of the Bankruptcy Code.

4117703.6

1.6.    "<u>Allowed Unsecured Claim</u>" means an Unsecured Claim that is or has become an Allowed Claim.

1.7.    "<u>Assets</u>" means each and every item of property and interest of the Debtor or the Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, and includes without limitation: (a) all Cash; (b) Real Property; (c) all Actions; (d) any other rights, deferred taxes, claims, causes of action or defenses, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; and (e) all of the Debtor's books, records and privileges.

1.8.    "<u>Avoidance Actions</u>" mean all Claims and Causes of Action which the Debtor has asserted or has the power to assert pursuant to Chapter 5 of the Bankruptcy Code.

1.9.    "<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code, to the extent applicable to the Chapter 11 Case.

1.10.    "<u>Bankruptcy Court</u>" means the United States District Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. § 158, the unit of such District Court constituted pursuant to 28 U.S.C. § 151.

1.11.    "<u>Bankruptcy Rules</u>" means the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. § 2075 and also referred to as the Federal Rules of Bankruptcy Procedure and the General and Local Rules of the Bankruptcy Court for the District of New Jersey.

1.12.    "<u>Bar Date</u>" means February 21, 2011, the deadline established by the Bankruptcy Court for filing a claim or request for payment.

1.13.   "<u>Business Day</u>" means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

1.14.   "<u>Cash</u>" means cash, bank deposits with, or letters of credit issued by, a bank which the Bankruptcy Court has approved or otherwise recognizes as a creditworthy federal depository, and negotiable instruments which are cashier's checks issued by such a bank or checks certified by such a bank as supported by sufficient collected funds to pay such instruments in full.

1.15.   "<u>Causes of Action</u>" means any claim or cause of action of the Debtor, including, without limitation, any Avoidance Actions, and including, without limitation, those Actions listed in section VII A.13 of the Disclosure Statement titled "Preservation of Rights of Actions, that are or may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date against any Entity and any objections to Claims.

1.16.   "<u>Chapter 11 Case</u>" means the Debtor's bankruptcy case.

1.17.   "<u>Claim</u>" means all claims as such term is defined in section 101(5) of the Bankruptcy Code.

1.18.   "<u>Class</u>" means a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of the Plan.

1.19.    "<u>Confirmation</u>" means the entry of the Confirmation Order.

1.20.   "<u>Confirmation Date</u>" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket.

1.21.   "<u>Confirmation Reserve Fund</u>" means the Fund that will be established by some or all of the Debtor's Members that will be used to fund Distributions to the Holders of Allowed

Class 4 Claims, Allowed Class 5 Claims, Allowed Class 6 Claims and Allowed Professional Compensation Claims.

1.22.   "Confirmation Hearing" means a hearing conducted before the Bankruptcy Court for the purpose of considering Confirmation of the Plan.

1.23.   "Confirmation Order" means an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.24.   "Creditor" means any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.   This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

1.25.   "Crowne Plaza Agreement" means the certain Crowne Plaza Brand Change License Agreement, dated March 25, 2010, between HHFI and the Debtor.

1.26.   "Cure" means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such Executory Contracts or unexpired leases, to the extent such obligations are enforceable under the Bankruptcy Code and applicable law.

1.27.   "Debt" means, refers to and shall have the same meaning ascribed to it in section 101(12) of the Bankruptcy Code.

1.28.   "Debtor" means Raritan Hospitality, LLC.

1.29.   "Debtor in Possession" means the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4117703.6

1.30.   "Debtor's Professionals" means Riker, Danzig, Scherer, Hyland & Perretti LLP; J.H. Cohn, LLP; and any other Persons or Entities employed by the Debtor and to be compensated pursuant to sections 326, 327 or 1103 of the Bankruptcy Code during the Chapter 11 Case.

1.31.   "Disallowed" means, with reference to a Claim, a Claim or any portion thereof that has been disallowed or expunged by a Final Order of the Bankruptcy Court or filed after the applicable Bar Date unless such late filing has been authorized by Final Order of the Bankruptcy Court.

1.32.   "Disclosure Statement" means and refers to the Disclosure Statement filed by the Debtor, as required pursuant to section 1125 of the Bankruptcy Code et seq., along with restatements, amendments, modifications or additional disclosures, if any, provided by the Debtor to comply with the provisions of the Bankruptcy Code and which has been approved by the Bankruptcy Court.

1.33.   "Disbursing Agent" means the Reorganized Debtor, or any Person or Entity designated by the Debtor as disbursing agent under Section 6.3 of the Plan.

1.34.   "Disputed" means, with reference to any Claim, any Claim which has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent or which is disputed under the Plan or as to which the Debtor has interposed a timely objection, has objected through the institution of a Cause of Action and/or has requested an estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order of the Bankruptcy Court.

4117703.6

1.35.   "Distribution" means any consideration to be distributed to any Entity pursuant to the Plan.

1.36.   "Distribution Date" means the date upon which a Distribution is made by the Reorganized Debtor in accordance with the Plan to Holders of Allowed Claims entitled to receive Distributions under the Plan.

1.37.   "Distribution Record Date" means the date established by the Debtor for determining the Holders of Claims and Interests entitled to Distributions pursuant to the Plan; and with respect to all Classes, shall be the Confirmation Date or such other date as may be set forth in the Confirmation Order.

1.38.   "Effective Date" means the first Business Day after the last of the following occurs, unless some condition for the occurrence of the Effective Date is waived by the Debtor: (a) the date on which the Confirmation Order is entered by the Bankruptcy Court and (b) satisfaction of all other conditions precedent to the effectiveness of the Plan set forth herein.

1.39.   "Entity" means an entity as defined in section 101(15) of the  Bankruptcy Code.

1.40.    "Estate" means the bankruptcy estate of the Debtor created under section 541 of the Bankruptcy Code.

1.41.   "Equity Interest" means any membership interest or other ownership interest in the Debtor, including any warrants, options, or other rights to purchase any such ownership interest in the Debtor.

1.42.   "Equity Interest Holder" means the holder of an Equity Interest in the Debtor.

1.43.   "Equity Offering" means the certain right to purchase an Equity Offering Percentage in the Reorganized Debtor to be offered to the Equity Offering Participants, the terms of which are set forth at Section 5.7 of the Plan.

1.44.    "Equity Offering Participant" means each Holder of an Equity Interest in the Debtor and each Non-Objecting Creditor of the Debtor that requests a Subscription Rights Notice prior to the Subscription Deadline.

1.45.    "Equity Offering Percentage" means the percentage of equity in the Reorganized Debtor to be purchased by a particular Equity Offering Participant, pursuant to the terms set forth in Section 5.7 of the Plan.

1.46.    "Equity Offering Purchaser" means an Equity Offering Participant who timely and properly executes and delivers a Subscription Form to the Debtor or other entity specified in the Subscription Form prior to the Expiration of the Subscription Deadline.

1.47.    "Equity Purchaser" means an Equity Offering Purchaser that does not provide written notice to the Debtor or other entity specified on the Subscription Form of its intent to withdraw its Subscription Form prior to the Subscription Notification Date.   As provided in Section 5.6 of the Plan, each Equity Purchaser will be subject to the approval of HHFI as is required by the Crowne Plaza Agreement and the TRA.

1.48.    "Escrow Agent" means the escrow agent as designated in the Escrow Agreement.

1.49.    "Escrow Agreement" means the escrow agreement dated January 7, 2011 establishing the Renovation Fund.

1.50.    "Executory Contract" means every unexpired lease and other contract that is subject to being assumed or rejected by the Debtor under section 365 of the Bankruptcy Code, pursuant to the Plan or by separate motion.

1.51.    "Final Decree" means the decree contemplated by Bankruptcy Rule 3022.

1.52.    "Final Equity List" means a listing of all Equity Purchasers and the Final Equity Offering Percentage to be allocated to each Equity Purchaser that will be compiled by the Debtor after the Subscription Notice Date.

1.53.    "Final Equity Offering Percentage" means the Equity Offering Percentage to be allocated to each Equity Purchaser, which will be that Equity Purchaser's ownership interest in the Reorganized Debtor.

1.54.    "Final Equity Offering Price" means the final price for a one percent (1%) equity interest in the Reorganized Debtor, which shall be calculated as of the Subscription Notice Date pursuant to the terms set forth at Section 5.6 of the Plan.

1.55.    "Final Order" means an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

1.56.    "General Unsecured Claim" means every Unsecured Claim against the Debtor (including, but not limited to, every such Claim arising from the rejection of an Executory Contract), which is not an Administrative Expense, a Priority Tax Claim, a Priority Non-Tax Claim, a Lifco Unsecured Claim, or a Litigation Unsecured Claim and which is classified and treated as the Plan provides for Class 4 Claims.

1.57.    "Holder" means the beneficial holder of any Claim.

1.58.    "Hotel" means the Debtor's hotel, located at 3050 Woodbridge Avenue, Edison, New Jersey.

1.59.    "HHFI" means Holiday Hospitality Franchising, Inc., the counterparty to the Debtor with respect to the Crowne Plaza Agreement.

10

1.60.   "<u>Impaired</u>" when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interests," means that the Plan alters the legal, equitable, or contractual rights of the member of that class.

1.61.   "<u>Initial Equity Offering Price</u>" means the price for a one percent (1%) equity interest in the Reorganized Debtor as of the Subscription Commencement Date, which shall equal $35,000.

1.62.   "<u>Insider</u>" means "insider" as defined in section 101(31) of the Bankruptcy Code.

1.63.   "<u>Initial Distribution Date</u>" means the first Distribution Date following the Effective Date.

1.64.   "<u>Intermediate Equity Offering Percentage</u>" means the Equity Offering Percentage to be allocated to each Equity Offering Purchaser as of the Subscription Deadline, which shall be calculated as set forth in Section 5.6 of the Plan.

1.65.   "<u>Intermediate Equity Offering Price</u>" means the price for a one percent (1%) equity interest in the Reorganized Debtor, which shall be calculated as of the Subscription Deadline, which shall be calculated as set forth in Section 5.6 of the Plan.

1.66.   "<u>Lien</u>" means "lien" as defined in section 101(37) of the Bankruptcy Code.

1.67.   "<u>Lifco</u>" means Lifco Hotels, LLC.

1.68.   "<u>Lifco Adversary Proceeding</u>" means the adversary proceeding styled *Raritan Hospitality, LLC v. Lifco Hotels, LLC and Michael Konig,* Adv. Pro. No. 10-02566 (KCF).

1.69.   "<u>Lifco Claim</u>" means the Proof of Claim in the filed amount asserted by Lifco against the Debtor's Estate.

1.70.   "<u>Lifco Fraudulent Transfer Action</u>" means the adversary proceeding styled *Raritan Hospitality, LLC v. Lifco Hotels, LLC*, Adv. Pro. No. 11-01073 (KCF).

1.71.   "Lifco Secured Claim" shall mean an Allowed Claim in the amount of $7,600,000, the market value of the Real Property, that is secured by a first priority lien upon the Debtor's Real Property, and which shall be treated as a Class 3 Allowed Claim as provided herein.

1.72.   "Lifco State Court Action" means the action pending in the Superior Court of New Jersey, Chancery Division, Middlesex County  styled *Lifco Hotels, LLC v. Raritan Hospitality, LLC v. Michael Konig*, Docket No. MID-C-214-09.

1.73.   "Lifco Unsecured Claim" shall mean a Claim in the amount of any remaining deficiency after deducting the Lifco Secured Claim from either the Lifco Claim or the amount of Lifco's Claim in an amount set forth in a Final Order establishing the amount of Lifco's Claim, which shall be treated as a Class 5 Claim as provided herein.

1.74.   "Litigation Unsecured Claim" shall mean an Unsecured Claim against the Debtor which arises from litigation commenced against the Debtor prior to the Petition Date, which shall be treated as a Class 6 Claim as provided herein.  The Litigation Unsecured Claims include, but are not limited to, Claims arising from the following actions: (i) Abe Rothenberg v. Raritan Hospitality d/b/a Holiday Inn Edison, et al., Docket No. Mid-L-4804-10 (Superior Court of New Jersey, Middlesex County); (ii) Gregory Lasky v. Raritan Hospitality, LLC d/b/a Holiday Inn, Docket No. Mid-C-000019-09 (Superior Court of New Jersey, Middlesex County); and (iii) Acevedo, et al. v. Holiday Inn, et al., Docket No. MID-L-3273-10 ((Superior Court of New Jersey, Middlesex County).

1.75.   "Local Rules" means the local bankruptcy rules of the United States Bankruptcy Court for the District of New Jersey.

1.76.   "Members" shall mean the members of Raritan Hospitality, LLC, as follows:

| Member Name | Membership Interest |
|-------------|---------------------|
| Gulshan Chhabra | Twenty (20%) Percent |
| Machnisu, L.L.C. | Fifty (50%) Percent |
| Jitendra Lodhia | Ten (10%) Percent |
| Jay Lodhia | Ten (10%) Percent |
| Pavan Sachan | Ten (10%) Percent |

1.77.    "Members' Investment" means the sum of the Renovation Fund, the Confirmation

Reserve Fund, which the Debtor estimates to be approximately $3,500,000.

1.78.    "Non-Objecting Creditor" means a Creditor that votes in favor of confirmation of

the Plan and does not object to confirmation of the Plan.

1.79.    "Operating Agreement" means the Debtor's operating agreement and every

amendment, if any.

1.80.    "Other Priority Claims" means any Claim, other than an Administrative Expense

or a Priority Tax Claim, that is entitled to priority in payment under section 507(a) of the

Bankruptcy Code.

1.81.    "Other Secured Claims" means any Secured Claim, other than the Lifco Secured

Claim.

1.82.    "Person" means "person" as defined in section 101(41) of the Bankruptcy Code.

1.83.    "Petition Date" means October 15, 2010, which is the date the Debtor filed its

voluntary Chapter 11 petition commencing the Chapter 11 Case.

1.84.    "Plan" means the Plan of Reorganization dated January 31, 2011, and every

restatement, amendment, or modification thereof, if any.

1.85.    "Plan Supplement" means a supplemental appendix to the Plan containing forms

of those documents necessary to be filed or executed in connection with the implementation of

the Plan, which Plan Supplement shall be filed by the Debtor with the Bankruptcy Court by no

later than the (10) days prior to the deadline to vote for or against the Plan.

1.86.   "Priority Tax Claim" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.87.   "Professional Compensation Claims" mean the Claims of the Chapter 11 Professionals for reimbursement of costs and expenses rendered after the Petition Date and prior to and including the Confirmation Date.

1.88.   "Real Property" means the real property, including, but not limited to, the Hotel, owned by the Debtor located at 3050 Woodbridge Avenue (Block 390-A, Lot 2), Edison, New Jersey.

1.89.   "Renovation Fund" means the certain fund established by the Debtor's Members, and currently held by the Escrow Agent which contains the principal balance of $2,000,000 and which will be used to fund the TRA Renovations upon confirmation of the Plan.

1.90.   "Reorganized Debtor" means Raritan Hospitality, LLC and any successor thereto on or after the Effective Date, after giving effect to the restructuring transactions occurring on or before the Effective Date in accordance with the Plan.

1.91.   "Riker Danzig" means Riker, Danzig, Scherer, Hyland & Perretti LLP.

1.92.   "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as such schedules and statement may have been amended, modified, and supplemented from time to time.

1.93.   "Secured Claim" means every Claim or portion thereof which is asserted by the Creditor holding such Claim to be secured by a Lien against any Assets but, pursuant to section 506 of the Bankruptcy Code, only to the extent of the validity, perfection, and enforceability of

14

the claimed Lien and the value of the interest of the Creditor holding such Claim against such Assets, if any.

1.94. "<u>Secured Creditor</u>" means every Creditor that holds a Secured Claim in the Chapter 11 Case.

1.95. "<u>Subscription Commencement Date</u>" means the date on which the Subscription Period commences, which shall be March 28, 2011.

1.96. "<u>Subscription Deadline</u>" means the date on which the Equity Offering shall expire as set forth in the Subscription Form, which date shall be the [voting deadline set by Bankruptcy Court in the Disclosure Statement Order].

1.97. "<u>Subscription Form</u>" means, collectively, that certain subscription form and subscription agreement to be distributed with the Subscription Rights Notice to Equity Offering Participants who provide a written request to the Debtor to obtain the Subscription Rights Notice prior to the Subscription Deadline.

1.98. "<u>Subscription Investment</u>" means the total amount of Cash each Equity Offering Participant offers to invest as Equity into the Reorganized Debtor.

1.99. "<u>Subscription Notification Date</u>" means a date that is not later than seven (7) Business Days following the Subscription Deadline.

1.100. "<u>Subscription Payment Amount</u>" means, with respect to a particular Equity Offering Participant, an amount of Cash equal to the Subscription Investment.

1.101. "<u>Subscription Payment Date</u>" means a date that is not later than five (5) Business Days following the applicable Subscription Notification Date (or such later date as is approved in writing by the Debtor or the Reorganized Debtor); <u>provided</u>, <u>however</u>, that such date must occur on or prior to the Effective Date.

1.102. "<u>Subscription Period</u>" means the time period during which the Equity Offering Participants may subscribe to purchase an Equity Offering Percentage, which period shall commence on the Subscription Commencement Date and shall expire on the Subscription Deadline.

1.103. "<u>Subscription Right</u>" means the right to participate in the Equity Offering, which right shall be non-transferable.

1.104. "<u>Subscription Rights Notice</u>" means that notice sent by the Debtor, prior to the Subscription Deadline, to Equity Offering Participants advising them of the procedures to be followed in subscribing for a purchase of an Equity Interest in the Reorganized Debtor.

1.105. "<u>Timeline and Budget</u>" means the timeline and budget attached as Exhibit "D" to the Disclosure Statement, which reflects the projected timeline and budget for completion of the TRA Renovations in accordance with the milestones set forth in the TRA.

1.106. "<u>TRA</u>" means the Temporary Removal Agreement dated as of January 7, 2011 between the Debtor and HHFI.

1.107. "<u>TRA Renovations</u>" means the renovations required by the TRA to be completed to convert the Hotel to a Crowne Plaza hotel.

1.108. "<u>TRA Stipulation</u>" means the stipulation between the Debtor and HHFI, approved and "So Ordered" by the Bankruptcy Court on January 31, 2011.

1.109. "<u>Unsecured Claim</u>" means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

1.110. "<u>U.S. Trustee</u>" means the Office of the United States Trustee for Region 3.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

2.1.    <u>Administrative Expense.</u>

Subject to this Section 2.1, except to the extent that a Holder of an Allowed Administrative Expense agrees in writing with the Debtor or Reorganized Debtor to less favorable treatment, the Reorganized Debtor shall pay to each holder of an Allowed Administrative Expense an amount equal to such Claim in full in Cash on or as soon as reasonably practicable after (a) the Effective Date, (b) the date such Administrative Expense becomes Allowed or (c) such other date as may be ordered by the Bankruptcy Court; <u>provided, however</u>, that Allowed Administrative Expense representing liabilities incurred in the ordinary course of business by the Debtor, as debtor in possession, or liabilities arising under loans or advances to or other obligations incurred by the Debtor, as debtor in possession in accordance with the Bankruptcy Code, shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents related to such transactions.

Except as otherwise provided in this Section 2.1, unless previously filed or paid, requests for payment of Administrative Expense must be filed and served on the Debtor or Reorganized Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Expense Deadline.  Holders of Administrative Expense that are required to file and serve a request for payment of such Administrative Expense that do not file and serve such a request by the Administrative Expense Deadline shall be forever barred, estopped and enjoined from asserting such Administrative

Expense against the Debtor or the Reorganized Debtor and such Administrative Expense shall be deemed discharged as of the Effective Date. All such Administrative Expense shall, as of the Effective Date, be subject to the permanent injunction set forth in Section 10.2 hereof. Objections to such requests must be filed and served on the Debtor or the Reorganized Debtor and the requesting party by the later of (a) 120 days after the Effective Date and (b) 60 days after the filing of the applicable request for payment of Administrative Expenses, if applicable, as the same may be modified or extended from time to time by order of the Bankruptcy Court.

Notwithstanding the foregoing, any expenses due and owing to HHFI under the Crowne Plaza Agreement and/or the TRA will be paid by the Debtor in the ordinary course of business, and HHFI will not need to assert an Administrative Expense related to these expenses.

2.2.    Professional Compensation Claims.

Any Person asserting a Professional Compensation Claim shall file a final Fee Application by no later than sixty (60) days after the Confirmation Date. A Professional Compensation Claim shall not become Allowed until approved by a Final Order of the Bankruptcy Court. All Professional Compensation Claims shall be paid in accordance with Section 2.1 of the Plan.

2.3.    Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtor or the Reorganized Debtor, (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date or the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (ii) equal annual Cash payments

in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the

applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5)

years after the date of assessment of such Allowed Priority Tax Claim. The Debtor reserves the

right to prepay at any time under this option. Except as otherwise permitted in this section, all

Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall

be paid in the ordinary course of business as such obligations become due.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS.

The following table designates the Classes of Claim against and Equity Interests in the

Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan; (ii)

entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy

Code and (iii) deemed to have accepted or rejected the Plan.

| Class | Designation | Treatment | Entitled to Vote |
|:---:|:---|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Lifco Secured Claim | Impaired | Yes (entitled to vote on the Plan) |
| 4 | General Unsecured Claims | Impaired | Yes (entitled to vote on the Plan) |
| 5 | Lifco Unsecured Claim | Impaired | Yes (entitled to vote on the Plan) |
| 6 | Litigation Unsecured Claims | Impaired | Yes (entitled to vote on the Plan) |
| 7 | Membership Interests | Impaired | No (deemed to reject) |

# ARTICLE IV

## TREATMENT OF CLAIMS

4.1.    <u>Treatment of Class 1 (Other Priority Claims)</u>.

The legal, equitable and contractual rights of the Holders of Allowed Other Priority Claims are unaltered.  Except to the extent a Holder of an Allowed Other Priority Claim has been paid by the Debtor prior to the Effective Date, or otherwise agrees to different treatment, each Holder of an Allowed Other Priority claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, payment of the Allowed Other Priority Claim in full in Cash on or as soon as reasonably practicable after (a) the Effective Date, (b) the date such Other Priority Claim becomes Allowed or (c) such other date as may be ordered by the Bankruptcy Court.

4.2.    <u>Treatment of Class 2 (Other Secured Claims)</u>.

Except to the extent that a Holder of an Allowed Other Secured Claim against the Debtor has agreed to less favorable treatment of such Claim, each Holder of an Allowed Other Secured Claim shall receive, in the sole discretion of the Debtor, either (a) the property securing such Allowed Other Secured Claim, (b) Cash in an amount equal to the value of the property securing such Allowed Other Secured Claim or (c) the treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be Reinstated or rendered unimpaired.

4.3.    <u>Treatment of Class 3 (Lifco Secured Claim)</u>.

The amount of the Lifco Secured Claim is disputed by the Debtor and is currently the subject of litigation between the Debtor and Lifco.  Through the Plan, the Lifco Secured Claim shall be treated as follows:

(a)    To the extent Lifco votes in favor of confirmation of the Plan and does not object to confirmation of the Plan, the Lifco Secured Claim shall be deemed an Allowed Secured

Claim in the amount of $7,600,000, the market value of the Real Property, pursuant to 11 U.S.C. § 506(a), which Claim shall be secured by a first priority mortgage lien upon the Real Property. The Lifco Secured Claim shall be amortized over a period of twenty-five (25) years at an annual interest rate of six percent (6%) and paid over a period of seven (7) years, as set forth herein.

Starting on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter for a period of twelve (12) months, the Disbursing Agent shall make monthly payments to the Holder of the Lifco Secured Claim of interest only in the amount of $38,000 per month. Beginning on the first day of the thirteenth (13th) month following the Effective Date, and continuing on the first day of each month over the next six (6) years, the Debtor shall make monthly principal and interest payments to the Holder of the Lifco Secured Claim in the amount of $48,966.91 per month. On or before the first day of the eighty-fifth (85th) month following the Effective Date, the Debtor shall make a balloon payment to the Holder of the Lifco Secured Claim of the then outstanding principal balance of the Lifco Secured Claim, which shall be $6,652,361.86.

(b)      To the extent Lifco votes to reject confirmation of the Plan, objects to confirmation of the Plan or fails to vote on the plan, the Lifco Secured Claim shall be treated and paid in the manner as set forth in Section 4.3(a) of the Plan, except that the monthly payments shall be made by the Disbursing Agent into an escrow fund pending entry of a Final Order establishing the Lifco Secured Claim. To the extent a Final Order is entered establishing the Lifco Secured Claim in an amount less than $7,600,000, the Lifco Secured Claim shall re-calculated and re-amortized at the time the Final Order is entered establishing the amount of the Lifco Secured Claim at the amount of the Allowed Lifco Secured Claim, including a recalculation of the balloon payment. Within ten (10) days of entry of a Final Order establishing

21

the Lifco Secured Claim, all funds previously escrowed, less any amounts overpaid into escrow to the extent the Lifco Secured Claim is determined to be less than $7,600,000, shall be paid to the Holder of the Lifco Secured Claim.

4.4. Treatment of Class 4 (General Unsecured Claims)

Holders of Allowed General Unsecured Claims shall receive payments in Cash equal to seventy-five percent (75%) of their Allowed Unsecured Claim on the later of: (a) the Effective Date, (b) the date such General Unsecured Claim becomes Allowed or (c) such other date as may be ordered by the Bankruptcy Court.

4.5. Treatment of Class 5 (Lifco Unsecured Claim).

The amount of the Class 5 Lifco Unsecured Claim is disputed by the Debtor and is currently the subject of litigation between the Debtor and Lifco. Through the Plan, the Lifco Unsecured Claim shall be treated as follows:

(a) To the extent Lifco votes in favor of confirmation of the Plan and does not object to confirmation of the Plan, the Lifco Unsecured Claim shall be deemed an Allowed Claim in the full amount of the Lifco Claim, less the amount of the Allowed Lifco Secured Claim under Section 4.3(a) of this Plan. The Holder of the Lifco Unsecured Claim will receive payment in Cash equal to twenty percent (20%) of the Allowed Lifco Unsecured Claim on the first day of the sixth (6th) month following the Effective Date. Treatment of the Lifco Unsecured Claim under this section 4.5(a) of the Plan shall constitute a good faith compromise and settlement of all claims of Lifco against the Debtor and all claims that the Debtor has asserted against Lifco in the Lifco Adversary Proceeding, the Lifco State Court Action, the Lifco Fraudulent Transfer Action or any other proceeding, which claims will deemed forever barred and resolved pursuant to the Plan.

22

(b)     To the extent Lifco votes to reject confirmation of the Plan, objects to confirmation of the Plan or fails to vote on the Plan, the Lifco Unsecured Claim shall not be deemed an Allowed Claim under this Plan unless and until a Final Order is entered establishing the amount of the Lifco Unsecured Claim.   Within forty-five (45) days after entry of a Final Order establishing the amount of the Lifco Unsecured Claim, the Holder of the Lifco Unsecured Claim will receive payment in Cash equal to seven and one half percent (7.5%) of the Allowed Lifco Unsecured Claim.

4.6.    Treatment of Class 6 (Litigation Unsecured Claims)

Holders of Allowed Litigation Unsecured Claims shall receive payments in Cash equal to seventy-five percent (75%) of their Allowed Litigation Unsecured Claims on the later of: (a) the Effective Date, (b) the date such Litigation Unsecured Claim becomes Allowed or (c) such other date as may be ordered by the Bankruptcy Court.

4.7.    Treatment of Class 7 (Membership Interests).

Upon the Effective Date, the Membership Interests in the Debtor shall be canceled.  New Equity Interests in the Reorganized Debtor shall be issued to the Equity Purchasers as detailed in Section 5.7 of the Plan.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1.    Settlement of Certain Claims.

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.

4117703.6

Notwithstanding anything contained herein to the contrary, all Distributions made to creditors holding Allowed Claims in any Class take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, and are intended to be and shall be final, and no Plan distribution to the holder of a Claim in one Class shall be subject to being shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement or other similar intercreditor arrangement. As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder are settled, compromised, terminated and released pursuant hereto; provided, however, that nothing contained herein shall preclude any person or entity from exercising their rights pursuant to and consistent with the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan.

 5.2. <u>Continued Corporate Existence and Vesting of Assets in the Reorganized Debtor.</u>

On the Effective Date, the Reorganized Debtor shall exist as in accordance with the applicable laws of the State of New Jersey pursuant to Debtor's formation documents and Operating Agreement in effect prior to the Effective Date, except to the extent such documents are to be amended pursuant to the Plan. Except as otherwise provided in the Plan, on and after the Effective Date, all property of the Estate of the Debtor, including all Causes of Action and

24

any property acquired by the Debtor or the Reorganized Debtor under or in connection with the Plan, shall be assigned to and shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and interests.   On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and dispose of property and compromise or settle any Claims without supervision of or approval by the Bankruptcy Court free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or the Confirmation Order.   Without limiting the foregoing, the Reorganized Debtor may pay the charges that they incur on or after the Effective Date for professionals' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

5.3.   <u>Corporate Governance.</u>

The Reorganized Debtor shall operate under the Operating Agreement, which shall be amended as necessary to incorporate the closing of the transactions contemplated by the Plan.

5.4.   <u>Termination of Liens.</u>

Except as otherwise provide herein, on the Effective Date, any Lien securing any Secured Claim shall be deemed released and the Holder of such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtor (including any cash collateral) held by such Holder and to take such actions as may be requested by the Debtor (or the Reorganized Debtor, as the case may be) to evidence the release of such Lien, including the execution, delivery and filing or recording of such release as may be requested by the Debtor (or the Reorganized Debtor, as the case may be).

25

5.5.     The Renovation Fund.

Upon the Effective Date, without any requirement of further action by the Debtor or the Reorganized Debtor, the Escrow Agent shall release to the Reorganized Debtor the Renovation Fund.  Pursuant to the Plan, the Renovation Fund shall be used by the Reorganized Debtor to fund the TRA Renovations in accordance with the Timeline and Budget.

5.6.     Equity in the Reorganized Debtor.

On the Effective Date, all prior equity interests in the Reorganized Debtor shall be deemed cancelled and all new equity interests in the Reorganized Debtor shall be established pursuant to the Equity Offering described in Section 5.7 of the Plan.

5.7.     Equity Offering.

(a)     Issuance of Subscription Rights Notice.

On the Subscription Commencement Date, the Debtor shall issue a Subscription Rights Notice to all known Equity Offering Participants, which includes all current Equity Holders of the Debtor as well as all Non-Objecting Creditors who have, prior to the Subscription Commencement Date, provided a written request to the Debtor to obtain the Subscription Rights Notice.  Following the Subscription Commencement Date, the Debtor shall distribute a Subscription Rights Notice to all Non-Objecting Creditors who provide a written request to the Debtor to obtain the Subscription Rights Notice prior to the Subscription Deadline.

(b)     Subscription Period.

The Equity Offering shall commence on the Subscription Commencement Date and shall expire on the Subscription Deadline.  Each Equity Offering Participant that intends or desires to participate in the Equity Offering must affirmatively elect to exercise its Subscription Rights, and

26

provide written notice thereof to the Entities specified in the Subscription Form, on or prior to the Subscription Deadline in accordance with the terms of the Plan and the Subscription Form.

      (c)   <u>Exercise of Subscription Rights and Payment of Subscription Payment Amount.</u>

The Debtor will mail each Equity Offering Participant the Subscription Rights Notice and the Subscription Form, together with the appropriate instructions for the proper completion, due execution, and timely delivery of the Subscription Form, as well as instructions for the payment of the eventual Subscription Payment Amount for the Final Equity Offering Percentage to be purchased by such Person.  The Subscription Form will require an Equity Offering Participant to commit to providing a personal guarantee to HHFI as to the Reorganized Debtor's obligations to HHFI under the Crowne Plaza Agreement and the TRA, consistent with the personal guarantees provided to HHFI by the Debtor's current Members.  The Debtor may adopt additional detailed procedures consistent with the provisions of the Plan to more efficiently administer the exercise of the Subscription Rights.

In order to exercise Subscription Rights, each Equity Offering Participant must return the duly completed Subscription Form enclosed with the Subscription Rights Notice to the Debtor or other Entity specified in the Subscription Form so the Subscription Form is actually received by the Debtor or such other Entity specified in the Subscription Form on or before the Subscription Deadline.  If the Debtor or such other Entity for any reason does not receive from a Person seeking Subscription Rights a duly completed Subscription Form on or prior to the Subscription Deadline, then such Person seeking Subscription Rights shall be deemed to have forever and irrevocably relinquished and waived its right to participate in the Equity Offering.

Pursuant to the terms of the Plan, each Member shall be deemed an Equity Offering Purchaser regardless of whether that Member submits a completed Subscription Form on or prior

to the Subscription Deadline. Each Members' Subscription Investment shall be calculated in an amount equal to that Member's pre-petition percentage ownership of the Debtor (identified in Section 1.76 of the Plan) multiplied times the Members' Investment, unless such Member affirmatively elects not to participate in the Equity Offering.

Within two (2) Business Days following the Subscription Deadline, the Debtor shall serve upon each Equity Offering Purchaser and HHFI, via overnight carrier, a list of all Equity Offering Purchasers, the Intermediate Equity Offering Price and the Intermediate Equity Offering Percentage to be allocated to each Equity Offering Purchaser. On or before the Subscription Notification Date, each Equity Offering Purchaser shall have the option to cancel and withdraw its Subscription Form by written notice to the Debtor or other entity identified on the Subscription Form. Upon receipt by the Debtor or other entity identified on the Subscription Form of a notice to cancel and withdraw an Equity Offering Purchaser's Subscription Form, that Subscription Form shall be deemed null and void and shall no longer be legally enforceable.

Prior to the Subscription Notification Date, each Equity Offering Purchaser must be approved by HHFI to be a Member of the Reorganized Debtor as is required pursuant to the terms of the Crowne Plaza Agreement and the TRA. To the extent an Equity Offering Purchaser is not approved by HHFI prior to the Subscription Notification Date, that Equity Offering Purchaser's Subscription Form shall be deemed null and void and shall no longer be legally enforceable.

Following the Subscription Notification Date, the Debtor shall serve upon each Equity Purchaser and HHFI the Final Equity List, which shall contain the Equity Purchasers approved by HHFI, the Final Equity Offering Percentage and the Final Equity Offering Price allocated to each Equity Purchaser.

4117703.6

Each Equity Purchaser must tender its Subscription Payment Amount to the Debtor so that it is actually received by the Debtor on or prior to the Subscription Payment Date. In the Event the Debtor receives any payment for the exercise of Subscription Rights prior to the Effective Date, such payments shall be held in a separate account until the Effective Date. In the event the Conditions to the Effective Date are not satisfied or waived, such payments shall be returned, without accrual or payment of any interest thereon, to the applicable Equity Purchaser, without reduction, offset or counterclaim.

  (d) <u>Determination of Final Equity Offering Price and Final Equity Offering Percentage.</u>

The Initial Equity Offering Price shall be set at $35,000 for each one percent (1%) interest in the Equity of the Reorganized Debtor. This amount is based upon the $3,500,000 Members' Investment, which as of the Subscription Commencement Date shall be an investment by the Members for a one hundred percent (100%) Equity Interest in the Reorganized Debtor. Following the Subscription Deadline, the Debtor will calculate the total sum of all of the Subscription Investments (which shall include the Members' Investments) and will then divide this amount by one hundred (100) to arrive at a new price per each one percent (1%) Equity Interest in the Reorganized Debtor, which shall be deemed the Intermediate Equity Offering Price. The Debtor will then divide each Equity Offering Purchaser's Subscription Investment (including the Members' Investment) by the Intermediate Equity Offering Price to determine each Equity Offering Purchaser's Intermediate Equity Offering Percentage. Following the Subscription Notification Date the Debtor will undertake the same calculations based upon the total Subscription Investment of the Equity Purchasers and will arrive at the Final Equity Offering Price and the Final Equity Offering Percentage allocated to each Equity Purchaser.

4117703.6

For purposes of example only, if only the Debtor's current Members subscribe to the Equity Offering according their current Equity Interests, the Final Equity Offering Price will be $35,000.00 per one percent (1%) Equity Interest in the Reorganized Debtor.  If, in addition to the current Members subscribing at their current Equity Interests, certain Non-Objecting Creditors wish to purchase a twenty-five percent (25%) interest in the Reorganized Debtor pursuant to the Equity Offering, the total Subscription Investments of those Non-Objecting Creditors will have to be $1,750,000, which shall increase the Final Equity Offering Price to $52,500.00 per one percent (1%) Equity Interest in the Reorganized Debtor (($3,500,000 + $1,750,000) / 100 = $52,500.00).

    (e)    <u>No Transfer; No Revocation.</u>

The Subscription Rights are not transferable or detachable.  Any such transfer or detachment, or attempted transfer of detachment, will be null and void.  Once an Equity Offering Participant has exercised any of its Subscription Rights by properly executing and delivering a Subscription Form to the Debtor or other Entity specified in the Subscription Form, such exercise may only be revoked, rescinded or annulled prior to the Subscription Notification Date as set forth herein, or in the sole discretion of the Debtor or Reorganized Debtor.

    (f)    <u>Validity of Exercise of Subscription Rights.</u>

All questions concerning the timeliness, validity, form and eligibility of any exercise or purported exercise of Subscription Rights shall be determined by the Debtor or the Reorganized Debtor.  The Debtor or the Reorganized Debtor, in their sole discretion reasonably exercised in good faith, may waive any defect or irregularity, or permit a defect or irregularity to be corrected within such times as they may determine, or reject the purported exercise of any Subscription Rights.  A Subscription Form shall be deemed not to have been received or accepted until all

irregularities have been waived or cured within such time as the Debtor or Reorganized Debtor determine in their sole discretion reasonably exercised in good faith.

  (g) <u>Equity Offering Proceeds.</u>

  The proceeds of the Equity Offering will fund Cash payments required to be made under the Plan, including, without limitation, payment of Allowed Claims, Allowed Administrative Expenses and Allowed Professional Compensation Claims and the TRA Renovations.  Any proceeds of the Equity Offering that are in excess of the funds needed to fund the TRA Renovations and the Cash payments required to be made under the Plan shall remain in the Reorganized Debtor as a capital investment for a period of not less than five (5) years after the Effective Date, and such proceeds shall not be used by the Reorganized Debtor to pay any dividends or distributions to the Members of the Reorganized Debtor for a period of five (5) years after the Effective Date, unless the Reorganized Debtor shall sell the Real Property prior to such time.  The remaining proceeds of the Equity Offering, if any, shall be distributed to the Members of the Reorganized Debtor on a pro-rata basis upon any sale of the Real Property or on the five (5) year anniversary after the Effective Date, whichever is earlier.  For avoidance of doubt, the proceeds of the Equity Offering shall not be permitted to be used to fund the payments on account of the Allowed Class 3 Lifco Secured Claim.

**ARTICLE VI**

**PROVISIONS GOVERNING DISTRIBUTIONS**

  6.1. <u>Date of Distributions.</u>

  Unless the Holder of an Allowed Claim agrees to a different Distribution Date, or except as otherwise provided herein, or as ordered by the Bankruptcy Court, Distributions to be made on account of Allowed Claims shall be made on dates set forth herein.  In the event that any

payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.2.    <u>Interest on Claims.</u>

Except as otherwise specifically provided for in the Plan, the Confirmation Order or other order of the Bankruptcy Court, or unless required by applicably bankruptcy or non-bankruptcy law, interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

6.3.    <u>Distributions by Disbursing Agent.</u>

The Reorganized Debtor shall act as Disbursing Agent or may employ or contract with other Persons or Entities to assist in or make the Distributions required by the Plan.  Other than as specifically set forth in the Plan, the Disbursing Agent shall make all Distributions required to be made under the Plan.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that the Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtor.

6.4.    <u>Powers of the Disbursing Agent.</u>

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties hereunder, (ii) make all Distributions contemplated hereby and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan.

4117703.6

6.5.   Delivery of Distributions.

The following terms shall govern the delivery of Distributions and undeliverable or unclaimed distributions with respect to Claims.

(a)   Delivery of Distributions in General.  All Distributions to any Holder of an Allowed Claim shall be made at the addresses set forth in the Debtor's books and records unless such addresses are superseded by proofs of Claims or Interests or transfers of Claims or Interests, if any, filed pursuant to Bankruptcy Rule 3001.

(b)   Undeliverable Distributions.  If any Distribution to the Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the Reorganized Debtor or the Disbursing Agent is notified in writing of such Holder's then current address, at which time all missed Distribution(s), to the extent provided under this Article, shall be made to such Holder without interest.  Any Holder of a Claim that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed Distribution within one (1) year after the Effective Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim of any undeliverable or unclaimed Distribution against the Debtor, the Estate, the Reorganized Debtor or their Property.  Nothing contained in the Plan shall require the Disbursing Agent or the Reorganized Debtor to attempt to locate any Holder of any Allowed Claim.

(c)   Time Bar to Payment.  Checks issued by the Disbursing Agent or the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within sixty (60) days after the date of issuance.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such

check was originally issued.  Any claim in respect of such a voided check shall be made on or before the later of 120 days after the date of issuance of such check.  After such date, all claims in respect of voided checks shall be discharged and forever barred.

6.6.   Record Date for Distributions.

The record date for Distributions under the Plan shall be the Distribution Record Date. The Disbursing Agent shall have no obligation to recognize the transfer of, or the sale of ,any Claim that occurs after the close of business on the Distribution Record Date.

6.7.   Allocation of Plan Distributions between Principal and Interest.

Except as otherwise expressly provided in the Plan, to the extent that any Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued by unpaid interest thereon, such Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of the such Claim representing accrued but unpaid interest.

6.8.   Means of Cash Payment.

Payments of Cash made pursuant to the Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Reorganized Debtor, by (a) checks drawn on or (b) wire transfers from a bank selected by the Reorganized Debtor.  Cash payments to foreign creditors, if any, may be made, at the option of the Reorganized Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

6.9.   Source of Cash for Plan Distributions.

Except as otherwise provided in the Plan or in the Confirmation Order, all Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan may be obtained from existing Cash balances, revenue generated from the operations of the Debtor and the

Reorganized Debtor, and Cash generated from the Equity Offering, or from financing by third parties.

      6.10.   <u>Withholding and Reporting Requirements.</u>

      In connection with the Plan and all Distributions hereunder, the Reorganized Debtor and the Disbursing Agent shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Reorganized Debtor and the Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding or reporting requirements.  All persons holding Claims or Interests shall be required to provide any information to the Reorganized Debtor or Disbursing Agent necessary to affect the reporting of such information and the withholding of such taxes, including, but not limited to, providing executed W-8 and/or W-9 tax forms, and to the extent such executed W-8 and/or W-9 tax forms are required for the Reorganized Debtor or the Disbursing Agent to make Distributions hereunder, all Holders of Claims who fail to provide the Reorganized Debtor or the Disbursing Agent with such executed W-8 and/or W-9 tax forms within ninety (90) days of receipt of a written request shall not be entitled to receive any Distribution under this Plan.

      6.11.   <u>Setoffs.</u>

      The Debtor and the Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim

under the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim the Debtor or the Reorganized Debtor may have against the holder of such Claim. For the avoidance of doubt, the Debtor and the Reorganized Debtor shall not be entitled to effectuate a setoff against the Lifco Secured Claim or the Lifco Unsecured Claim under sections 4.3(a) and 4.5(a) of this Plan.

6.12.  Fractional Cents.

Notwithstanding any other provision of the Plan, no payments or Distributions under the Plan of or on account of fractions of cents will be made.  When any payment or Distribution of or on account of a fraction of a cent to any Holder of an Allowed Claim would otherwise be required, the actual payment or Distribution made will reflect a rounding of such fraction to the nearest whole cent.

6.13.  Preservation of Causes of Action.

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtor may pursue, sue on, settle or compromise such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor.

No Person or Entity may rely upon the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action

against them.  Except with respect to Causes of Action as to which the Debtor or Reorganized Debtor have released any Person or Entity on or before the Effective Date (including pursuant to the Releases by the Debtor or otherwise), the Debtor or Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against any Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or pursuant to a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches shall apply to such Causes of Action upon, after or as a consequence of the confirmation or consummation of the Plan, or the occurrence of the Effective Date.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1.    Allowance of Claims.

After the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim not deemed Allowed by the Plan.  Except as expressly provided in the Plan or in any other Final Order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.

4117703.6

7.2.    Objections to Claims.

Prior to the Effective Date, the Debtor, and after the Effective Date, the Reorganized

Debtor, shall be entitled to object to Claims, other than Claims that are expressly Allowed

pursuant to the Plan or Allowed by Final Order subsequent to the Effective Date.  Any objections

to Claims shall be filed and served on or before the later of: (a) one hundred twenty (120) days

after the Effective Date, unless extended by order of the Bankruptcy Court and (b) such date as

may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause

(a) above.

7.3.    Payments and Distributions with Respect to Disputed Claims.

Notwithstanding any other provision hereof, if all or any portion of a Claim is a Disputed

Claim, no payment or Distribution provided hereunder shall be made on account of such Claim

unless and until such Disputed Claim becomes an Allowed Claim.

7.4.    Estimation of Claims.

Prior to the Effective Date, the Debtor, and after the Effective Date, the Reorganized

Debtor, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated

or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the

Debtor or the Reorganized Debtor previously objected to such Claim or whether the Bankruptcy

Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to

estimate any Claim at any time during litigation concerning any objection to any Claim,

including, without limitation, during the pendency of any appeal relating to any such objection.

In the event the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the

amount so estimated shall constitute either the Allowed amount of such Claim or a maximum

limitation on such Claim, as determined by the Bankruptcy Court.   If the estimated amount

constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

7.5.    <u>Distributions Related to Disputed Claims.</u>

At such time (if any) as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall make a Distribution to the Holder of such Allowed Claim, in accordance with the treatment of the Allowed Claim as set forth in this Plan. To the extent that all or a portion of a Disputed Claim is Disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is Disallowed.

7.6.    <u>Preservation of Rights to Settle Claims.</u>

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all Causes of Action, whether known or unknown, that the Debtor or its Estate may hold against any Person or Entity without the approval of the Bankruptcy Court, subject to the terms of Section 7.1 hereof, the Confirmation Order and any contract, instrument, release or other agreement entered into in connection herewith. The Reorganized Debtor may pursue such retained claims, rights or Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Reorganized Debtor.

7.7.    <u>Disallowed Claims.</u>

All Claims held by persons or Entities against whom or which the Debtor or Reorganized Debtor has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544,

545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed Disallowed claims

pursuant to section 502(d) of the Bankruptcy Code.  Claims that are deemed Disallowed pursuant

to this section shall continue to be Disallowed for all purposes until the Cause of Action against

such party has been settled or resolved by Final Order and any sums due to the Debtor or the

Reorganized Debtor from such party have been paid.  Notwithstanding the foregoing, to the

extent the Holders of the Lifco Secured Claim and the Lifco Unsecured Claim vote in favor of

the Plan pursuant to sections 4.3(a) and 4.5(a) hereof, such Holders shall be entitled to vote.

      7.8.    <u>Reserve for Disputed Unsecured Claims.</u>

      Prior to the making of any Distributions to Holders of Allowed Class 4, Class 5 or Class

6, the Disbursing Agent shall establish appropriate reserves for Disputed Claims by withholding

from any such distributions an amount equal to one hundred percent (100%) of Distributions to

which holders of such Disputed Claims would be entitled under the Plan as of such date as if

such Disputed Claims were Allowed in full in the amount asserted by the Holder thereof in its

respective timely filed proof of Claim, <u>provided</u> <u>however,</u> that the Debtor or the Reorganized

Debtor shall have the right to file a motion seeking to estimate such amounts.  The Reorganized

Debtor or the Disbursing Agent shall also establish appropriate reserves for Disputed Claims in

other Classes as they may determine to be necessary and appropriate.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

      8.1.    <u>General Treatment.</u>

      As of, and subject to the occurrence of the Effective Date, and subject to Section 8.2 of

the Plan, all Executory Contracts and unexpired leases (including in each case, any related

amendments, supplements, consents, estoppels or ancillary agreements) to which the Debtor is a

party is hereby assumed, except for any Executory Contract or unexpired lease that (i) previously has been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, (ii) is specifically designated by the Debtor as an Executory Contract or unexpired lease that will be rejected on the Plan Supplement, or (iii) is the subject of a separate assumption or rejection motion filed by the Debtor under section 365 of the Bankruptcy Court prior to the Confirmation Date. For the avoidance of doubt, the Crowne Plaza Agreement will be assumed by the Debtor.

8.2.    Cure of Defaults.

Except to the extent that different treatment has been agreed to by the nondebtor party or parties to any Executory Contract or unexpired lease to be assumed pursuant to Section 8.1 of the Plan, the Debtor shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, list the cure amounts of all Executory Contracts or unexpired leases to be assumed on the Plan Supplement. Any party that fails to object to the applicable cure amount within seven (7) days prior to the Confirmation Hearing shall be forever barred, estopped and enjoined from disputing the cure amount and/or from asserting any Claim against the Debtor or Reorganized Debtor arising under section 365(b)(1) of the Bankruptcy Code, except as set forth in the list of cure amounts on the Plan Supplement. Any cure amount listed in the Plan Supplement to which no timely objection is filed in accordance with Section 8.2 of the Plan shall be paid in full on the Effective Date or as soon thereafter as is reasonably practicable. If there are any timely objections filed, the cure payments, if any, required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such dispute. The Debtor or the Reorganized Debtor shall retain their right to reject any Executory Contracts or unexpired leases that are subject to a dispute, including Executory Contracts or unexpired leases that are subject to

a dispute regarding amounts necessary to cure any defaults, until the entry of a Final Order resolving such dispute.

    8.3.    <u>Rejection Damage Claims.</u>

In the event that the rejection of an Executory Contract or unexpired lease by the Debtor pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not previously evidenced by a timely filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor or the Reorganized Debtor, or their respective properties or interests, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtor and the Reorganized Debtor on or before the date that is thirty (30) days after the Confirmation Date or such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults.

    8.4.    <u>Assignment and Effect of Assumption.</u>

Any Executory Contract or unexpired lease assumed shall remain in full force and effect for the benefit of the Reorganized Debtor in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in sections 365(b)(2) of the Bankruptcy Code) that prohibits, restricts or conditions such assumption, transfer or assignment. Any provision that prohibits, restricts or conditions the assignment or transfer of any such Executory Contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such Executory Contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment constitutes an unenforceable anti-assignment provision and is void and of no force or

effect.   For avoidance of doubt, the Crowne Plaza Agreement shall not be assigned by the Debtor.

8.5.   <u>Insurance Policies.</u>

All insurance policies pursuant to which the Debtors has any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as Executory Contracts pursuant to the Plan and shall be treated in accordance with Sections 8.1 and 8.2 of the Plan.

**ARTICLE IX**

**<u>CONDITIONS TO EFFECTIVE DATE</u>**

9.1.   <u>Conditions to Occurrence of Effective Date.</u>

The occurrence of the Effective Date of the Plan is subject to the satisfaction or waiver of the following conditions precedent:

(a)   The Confirmation Order shall authorize and direct that the Debtor take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases and other agreement or document created in connection with the Plan and the transactions contemplated thereby.

(b)   The Confirmation Order shall have become a Final Order.

(c)   The Disbursing Agent has been appointed.

(d)   All reserves required under this Plan have been established.

(e)   The statutory fees owing to the US Trustee shall have been paid in full.

(f)   The Equity Offering shall have been completed.

(g)   All other actions, authorizations, consents and regulatory approvals required (if any) and all documents necessary to implement the provisions of the Plan shall have been

43

obtained, effected or executed in a manner acceptable to the Debtor, or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

9.2.    Waiver of Conditions to Effective Date.

The Debtor shall have the right to waive one or more of the conditions precedent set forth in section 9.1 of the Plan; *provided however*, that the condition precedent set forth in section 9.1(e) shall not be waivable by the Debtor.

9.3.    Effect of Failure of Conditions to Effective Date.

If the Effective Date does not occur on or before the date that is 180 days after the Confirmation Date or if the Confirmation Order is vacated, (i) no distributions under the Plan shall be made, (ii) the Debtor and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) all the Debtor's obligations with respect to the Claims and the Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any other Entity in any further proceedings involving the Debtor or otherwise.

## ARTICLE X

## EFFECTS OF PLAN CONFIRMATION

10.1.    Vesting of Assets.

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's Estate shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided herein. Further, on the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and

dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.   On the Effective Date, except as provided herein, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtor or its Estate shall be fully released, terminated and discharged without further notice or action by the Debtor, Reorganized Debtor, Holders of any such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtor or its Estate, the Bankruptcy Court or any applicable federal, state or local governmental agency or department.

10.2.   Discharge.

Except as otherwise expressly provided herein or the Confirmation Order, the rights afforded herein and the payments and Distributions to be made hereunder shall (i) be in exchange for and in complete satisfaction, settlement, discharge and release of all existing debts and Claims against and Equity Interests in the Debtor  of any kind or nature whatsoever against the Debtor or any of its assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests to the fullest extent permitted by section 1141 and other applicable provisions of the Bankruptcy Code.   Except as otherwise provided by this Plan or in the Confirmation Order, upon the Effective Date, the Debtor and its Estate shall be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

45

Except as otherwise expressly provided herein or in the Confirmation Order, all Persons or Entities who have held, now hold, or may hold Claims against or Equity Interests in the Debtor, and all other parties in interest, along with their respective present and former employees, agents, and members, are permanently enjoined from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to such Claim against the Debtor or the Reorganized Debtor, or property of the Debtor or the Reorganized Debtor, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or the Reorganized Debtor, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or the Reorganized Debtor or against the property or interests in property of the Debtor or the Reorganized Debtor, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or the Reorganized Debtor, with respect to such Claim against or Equity Interest in the Debtor.  Such injunction shall extend to any successors of the Debtor and Reorganized Debtor and their respective properties and interest in properties.

10.3.   Term of Injunctions or Stays.

Unless otherwise provided in the Plan, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.4.   Releases.

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, the

Debtor, the Reorganized Debtor and all Holders of Claims and/or Equity Interests and each of their respective affiliates, principals, officers, directors, partners, members, attorneys, accountants, financial advisors, advisory affiliates, employees and agents (each a "Released Party") shall each conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each other Released Party from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that any Released Party would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in party, the Debtor, the Reorganized Debtor, the Chapter 11 Case, the Plan, the purchase, sale, or rescission of the purchase or sale of any assets of the Debtor, the subject matter of, or the transactions or events giving rise to, the Debtor or any Released party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or any related agreement, instrument, or other documents, upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than any Claims, direct actions, causes of action, demands, rights, judgments, debts, obligations, assessments, compensations, costs, deficiencies, or other expenses of any nature whatsoever (including, without limitation, attorneys' fees) (i) arising under or based on the Plan or any other documents, instrument or agreement to be executed or delivered therewith, or (ii) in the case of gross negligence, willful misconduct or fraud.  For sake of clarity, and except as set forth in Sections 4.3(a) and 4.5(a) of the Plan, the Debtor and/or the Reorganized Debtor shall not release or waive any Claims or Causes of Action against Lifco.

Furthermore, nothing herein shall be deemed to constitute a release of any guarantees provided to HHFI by the Members.

    10.5.   <u>Exculpation.</u>

    As of the Effective Date, the following parties, entities and individuals shall be deemed released and shall have no liability to any person or entity for any Claims or Causes of Action arising on or after the Petition Date for any acts taken or omitted to be taken in connection with, or related to either the Chapter 11 Case or formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor except for any express contractual or financial obligations arising under or that is part of the Plan or an agreement entered into pursuant to, in connection with or contemplated by, the Plan: (i) the Debtor and the Reorganized Debtor; (ii) the Debtor's Professionals; (iii) the Disbursing Agent; (iv) the Escrow Agent and (v) the current and former officers, directors, members, employees, affiliates, agents, financial advisors, professionals, accountants and attorneys of the foregoing.  Such parties, entities and individuals shall be entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan.  Notwithstanding the foregoing, the provisions of this Section 10.4 shall not limit any liability on the part of the aforementioned parties that is determined by a Final Order of a court of competent jurisdiction for actions or failure to act amounting to willful misconduct, intentional fraud or criminal conduct.

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction for the following purposes:

(a)    To determine the allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Disbursing Agent or any other party-in-interest entitled to proceed in that manner.  As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Expenses and any request for payment thereof, including Professional Compensation Claims.

(b)    To ensure that distributions to Holders of Allowed Claims are accomplished has provided in the Plan.

(c)    To determine any dispute which may arise regarding the interpretation of any provisions of the Plan.

(d)    To enforce any provisions of the Plan and any and all documents relating to the Plan.  The Bankruptcy Court also will retain jurisdiction over any matter relating to the implementation and/or consummation of the Plan.

(e)    To facilitate the performance of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate order regarding enforcement of the Plan and any provision thereof.

(f)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to facilitate compliance with, and to restrain interference by any person with the consummation, implementation or enforcement of the Plan,

49

the Confirmation Order or any other order of the Bankruptcy Court and the transactions contemplated thereby.

(g)   To facilitate or implement the allowance, disallowance, treatment or satisfaction of any Claim, or any portion thereof, pursuant to the Plan.

(h)   To enter an appropriate final decree in the Chapter 11 Case.

(i)   To determine any and all motions regarding the determination of a contract as an Executory Contract, assumption or rejection of any Executory Contracts and any and all Claims arising therefrom.

(j)   To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

(k)   To determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code.

(l)   To (i) hear and determine any claim or cause of action arising in or related to the Chapter 11 Case; and (ii) to adjudicate any Causes of Action or other proceedings currently pending or which may be commenced by the Reorganized Debtor after the Effective Date or otherwise referenced here or elsewhere in the Plan, including, but not limited to, the adjudication of any actions and any and all "core proceedings" under 28 U.S.C. § 157(b), which are or may be pertinent to the Chapter 11 Case and which the Debtor may commence and prosecute in support of implementation of the Plan.

(m)   In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and to the extent the Confirmation Order has not been stayed, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter

such orders regarding the Plan or the performance thereof as may be necessary to consummate the Plan.

## ARTICLE XII

## GENERAL PROVISIONS

12.1.   Extension of Payment Dates.

If any payment date falls due on any day which is not a Business Day, then such due date will be extended to the next Business Day.

12.2.   Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.3.   Amendments.

The Plan may be amended, modified or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Debtor or the Reorganized Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

12.4.   Binding Effect.

On the Effective Date, and effective as of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, the Holders of Claims and Equity Interests, and each of their respective successors and assigns, including, without limitation, the Reorganized Debtor, whether or not such Holder: (i) will receive or retain any property or interest in property under

the Plan; (ii) has filed a proof of Claim or Interest in the Chapter 11 Case or (iii) failed to vote to accept or reject the Plan or affirmatively voted to reject the Plan.

12.5.    Notices.

All notices, requests and demands to or upon the Debtor or the Reorganized Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Raritan Hospitality, LLC
3050 Woodbridge Avenue
Edison, New Jersey 08837
Attn: Gulshan Chhabra

- and -

Riker Danzig Scherer Hyland & Perretti LLP
Joseph L. Schwartz, Esq.
Kevin J. Larner, Esq.
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07962
Telephone: (973) 538-0800
Facsimile: (973) 538-1984

12.6.    Interest.

Whenever interest is to be computed under the Plan, interest will be simple interest and not compounded.  Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim will be entitled to interest accruing on or after the Petition Date on any Claim.

12.7.    Severability.

If the Bankruptcy Court determines, before or after the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or

4117703.6

unenforceable with respect to the Holder or Holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of the Plan.

### 12.8.    Governing Law.

Except to the extent the Bankruptcy Code, Bankruptcy Rules, Local Rules, or other federal law is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law of thereof.

### 12.9.    Reservation of Rights.

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

### 12.10.   Revocation or Withdrawal

The Plan may be revoked or withdrawn by the Debtor prior to the Confirmation Date. If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any other Entity in an further proceedings involving the Debtor.

4117703.6

12.11.  <u>Successors and Assigns.</u>

The rights and obligations of any Creditor referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors and personal representatives of such Creditor.

12.12.  <u>Payment of Statutory Fees and Filing of Quarterly Reports.</u>

All fees payable pursuant to 28 U.S.C. § 1930, along with any accrued interest thereon, as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, pending entry of the Final Decree.  All post-confirmation quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed in accordance with applicable bankruptcy law.  The U.S. Trustee will continue to be paid by the Reorganized Debtor until entry of the final order or decree, or upon conversion or dismissal of the Bankruptcy Case.

12.13.  <u>Plan Supplement.</u>

Forms of all material agreements or documents related to the Plan, including, but not limited to those identified in the Plan, shall be contained in the Plan Supplement.  The Plan Supplement shall be filed by the Debtor with the Clerk of the Bankruptcy Court no later than ten (10) days before the deadline to vote for or against the Plan.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours.  Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to the Debtor's counsel.

12.14.  <u>Headings.</u>

Headings are used in the Plan for convenience and reference only, and shall not constitute a party of the Plan for any other purpose.

4117703.6

12.15.  <u>Exhibits/Schedules.</u>

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth fully therein.

12.16.  <u>No Admissions.</u>

Notwithstanding anything to the contrary in the Plan, nothing contained in the Plan shall be deemed as an admission by any Person or Entity with respect to any matter set forth in the Plan.

*[Signature page to follow]*

55

Respectfully submitted,


RARITAN HOSPITALITY, LLC


By:  /s/ Gulshan Chhabra_____
Name: Gulshan Chhabra
Title: Managing Member

Dated:  April 1, 2011