*United States Bankruptcy Court*
*District of New Jersey*
*Clarkson S. Fisher Federal Building*
*United States Courthouse*
*402 East State Street*
*Trenton, New Jersey 08608*

*Hon. Kathryn C. Ferguson, USBJ* *(609) 989-0494*

July 8, 2011

Joseph L. Schwartz, Esquire
Riker, Danzig, Scherer, Hyland and Perretti, LLP
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07962

Valerie A. Hamilton, Esquire
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, New Jersey 07102

                Re:  Raritan Hospitality, LLC
                   Case No. 10-42099

                   Riker, Danzig, Scherer, Hyland & Perretti, LLP
                   Application for Compensation
                   Document #192

Counselors:

     Riker, Danzig, Scherer, Hyland and Perretti LLP [Riker], as counsel to the Debtor Raritan Hospitality, LLC [Raritan] filed its first Interim Fee Application on March 1, 2011.  The application encompassed the period from the date the petition was filed until January 31, 2011. Pursuant to an Administrative Order entered on November 15, 2010, Riker was permitted to file monthly fee statements that, in the absence of objection, allowed interim payments after a 21 day

review period. Lifco Hotels, LLC [Lifco] objected to portions of the monthly statements and also objected to the fee application currently before the court. The parties adjourned the hearing on the fee application at least once to try to work out some of the objections, but were unsuccessful. The court took oral argument on the fee application on May 18, 2011 and reserved decision on the fee application and the objection. This opinion supports the court decision approving the fee in part and sustaining the objection in part.

Lifco objects that Riker has overstaffed the case, spent unreasonable amounts of time on services, billed for services that were not necessary or duplicative, and submitted time entries that were vague or lumped so as to impair review for reasonableness. Riker responds tit for tat on the objections as to particular services and also alleges that the objections are intended to leave Debtor's counsel hamstrung in an extensively litigated proceeding. Lifco also makes an overarching objection that the monthly fee statements as well as the final application did not reflect a 10% discount extended to the Debtor as a courtesy as described in the application for retention. Riker responds that the 10% discount was appropriately calculated. Since this last dispute touches on all others, the court will address it first.

At oral argument, the parties agreed that Riker had offered a 10% discount to the Debtor but disagreed as to how that discount should be calculated: Lifco argued that the 10% should come off the firm's hourly rates prior to review by the court, whereas Riker argued that the court should determine the total of reasonable services, apply the 10% discount and deduct only if the court's adjustments exceeded 10% of the total requested.

The record is clear that Riker wished to give its client a 10% discount. The record as to how the 10% discount should be calculated is not. The retention application signed by the Debtor and filed with the court says: "The proposed arrangement for compensation is on an

2

hourly basis, in accordance with Riker Danzig's standard hourly rates, less a voluntary ten percent (10%) discount." It is unclear from this language and punctuation whether the phrase "10% discount" is meant to describe the phrase "compensation on an hourly basis" or "Riker Danzig's standard hourly rates."

The retention application also says, however, that: "A full description of the proposed compensation arrangement is set forth in the accompanying Certification of Joseph L. Schwartz…." That language suggests that in the event the retention application is unclear, the language of Mr. Schwartz's application will govern. Mr. Schwartz's certification in support of retention says: "Riker Danzig will render services on an hourly basis in accordance with Riker Danzig's standard rates, and, pursuant to an agreement with the Debtor, will provide the Debtor with a ten percent (10%) discount." That language is slightly more edifying; the differing comma placement and the addition of the conjunctive "and" makes it slightly more clear that the hourly fees will be calculated at the Riker standard rate and then, as a separate conceptual step, the firm will give a 10% discount.

The fee application itself describes the discount in still different language. It says: "Additionally, the fees charged by Riker Danzig in this case are billed in accordance with the firm's existing billing rates and procedures in effect during the Compensation Period, less a ten percent (10%) discount." Although it is missing the "and" that sets off the 10% discount as a distinct step, this language does not distance the phrase "in accordance with Riker Danzig's standard hourly rates" with bracketing commas.

This is the kind of analysis that would make my 11th grade English teacher very happy, but gives lawyers a bad name.

In the end, the bulk of the various phrasings tilt towards the conclusion that the parties intended that Riker would accrue fees at its standard hourly rates and then take a 10% discount. In the bankruptcy context, that means that the court should determine the reasonableness of the fees sought at the standard rate, make any adjustments it deems appropriate and then take off the 10% discount afterwards.

Riker argues that the court should make no adjustment unless or until the adjustments exceed 10% of the total fee or Riker would be forced to accept a "double hit." It also argues that the court is not bound by any arrangement between it and the Debtor and that the voluntary discount compensates for any adjustment the court might find necessary. Neither of these arguments is persuasive. Riker correctly notes that the court is not bound by the terms agreed by the parties, even those disclosed in the retention application. At the same time, common sense dictates that the agreed terms should be the default position. Absent some reason to deviate from those terms, the court should calculate the fee in the manner directed by the Third Circuit and then honor the agreement of the parties. More to the point, it is not a "double hit" to take away 100% of the fees the court believes to be unreasonable and 10% on the fees it believes to be reasonable. That is the only means of calculation that respects both the role of the court and the agreement of the parties. The court sees no reason why Riker should get any credit whatsoever for unreasonable fees.

Which brings us to the more typical objections to fees. By way of general background, section 330 provides for reasonable compensation for actual, necessary services rendered by the Trustee examiner, professional person or attorney and by any paraprofessional person employed by such person. *See,* In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 840 (3d Cir. 1994). The Third Circuit has stated that "the most useful starting point for determining the amount of a

4

reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Rode v. Dellarciprete, 892 F.2d 1177,1183 (3d Cir 1990)  The court should exclude hours that it finds are not reasonable expended. Id.  "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." Id.  Once the court determines the reasonable hourly rate, it multiplies the rate by the reasonable hours expended to obtain the "lodestar" Id.  The lodestar is presumed to be the reasonable hourly rate. Id.; *See also,* In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833 (3d Cir. 1994.)  Calculation of the lodestar involves a two-step process.  First, the court must determine the reasonable number of hours expended multiplied by the appropriate billing rate.  Second, once the appropriate lodestar amount is established, the next step is a determination as to whether or not an enhancement or reduction of the fee is warranted.  The applicant bears the burden of proof for its claim for compensation. Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 260 (3d Cir. 1995).

  Against that backdrop, the court finds that some of the objections are well taken.  For example, Riker consistently had multiple attorneys at hearings and strategy sessions, and often had multiple attorneys work on the same document.  This court certainly understands that some conferencing regarding strategy may be necessary, and understands that downstreaming less complex tasks to those billing at a lower hourly rate may ultimately benefit the client.  There is simply no excuse, however, for billing for two or more attorneys to travel to attend a hearing where only one presented argument; that is neither reasonable nor necessary.  Moreover, the number of times that three or more attorneys reviewed transcripts or monitored a conference call or contributed to a particular document is excessive and not warranted by the complexity or even the litigiousness of this case.  The percentage of time entries billed for internal office conferences

is extraordinary, again, even for a case of this level of complexity and litigiousness.  The blended hourly rate in this case is a relatively lofty $360 per hour.  There are also multiple entries where the nature of the task listed cannot justify either the hourly rate charged or the amount of time devoted.  The court will sustain the objection regarding staffing inefficiencies and excessive time in part and make an adjustment of $23,400 based on these unreasonable and excessive services (approximately 65 hours at the blended hourly rate.)

     The objection that services were unnecessary because of the substance of the work, however, will be overruled.  Riker spent a great deal of time defending the stay and abstention motions that were ultimately lost and did not benefit the debtor.  The standard is not whether services actually benefitted the estate, but whether they seemed reasonably likely to do so at the time they were rendered. *See, e.g,* In re Keene Corp., 205 B.R. 690 (Bankr. S.D.N.Y.  1997) (When determining whether attorney services conferred benefit to bankruptcy estate for purposes of awarding attorney fees, court should not make determination through hindsight, but rather test is objective one and considers what services reasonable lawyer or legal firm would have performed in same circumstances); In re Thrifty Oil Co., 205 B.R. 1009 (Bankr. S.D. Cal. 1997) (rather than strict "benefit to the estate" test, better approach of testing benefit is to determine whether professional's services were intended to increase value of the return and were reasonably anticipated to do so when rendered.)  This court ultimately ruled that stay relief and abstention were appropriate, but this court is not always right and there were legitimate arguments to be made.  Almost any debtor's attorney would have dedicated substantial resources to defending a stay motion involving issues that are of some importance to the estate.

     Likewise, the court understands that Lifco disagrees that the Debtor will be unable to install solar panels without its permission, but disagreement as to remedies that may be  available

does not render services unnecessary or even unreasonable. The solar panel issue is one of long term importance to the Debtor. It would be inappropriate to judge the efforts to accomplish the Debtor's solar panel goals as ineffective simply because they have not yet borne fruit: the Debtor is still positioning itself for that motion, which has not even been filed. The court has no present opinion about whether the Debtor will be successful, but it is not unreasonable to attempt to develop factual and legal support for an action that may be important to the Debtor's reorganization efforts.

Finally, there are some instances where Riker's time entries are lumped or presented in an unacceptably vague manner. The court will make an additional $3,000 adjustment in sustaining that objection.

The total fee sought by Riker is $426,372. Riker made a voluntary and appropriate adjustment of $4,849.25 for non-working travel. The court made an additional $26,400 adjustment for a total of $395,122.75. The court then applied the 10% discount for a total award on the first interim fee application of $355,610.

Lifco did not object to the expenses, and while the court has a few questions about meals and miscellaneous supplies, they will be granted as requested.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge